**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 93-1133
Summary Calendar

TROY L. ARMSTRONG,

Plaintiff-Appellant,

versus

CITY OF DALLAS,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas
(    July 22, 1993    )

Before POLITZ, Chief Judge, DUHÉ and DeMOSS, Circuit Judges.

POLITZ, Chief Judge:

Troy L. Armstrong, formerly a Dallas fire fighter, appeals the adverse summary judgment rejecting his Title VII discrimination claim against the City.  Finding no error, we affirm.


Background

Armstrong joined the Dallas Fire Department in June 1970 as a rescue officer, ultimately attaining the rank of second driver before retiring with benefits in 1991.  He seeks relief for alleged official harassment by his superiors on account of his race and

because he filed a complaint with the Equal Employment Opportunity Commission.

In 1987 the Dallas Fire Department responded to a perceived crisis by adopting a Physical Fitness Weight Program. The program established maximum body-weight standards based on height and body type. It also initiated weight loss goals for fire fighters exceeding the standards.

Shortly after the program was implemented forces within the department purportedly lined up against Armstrong because "he assumed the role of spokesman on behalf of his black co-workers" in connection with a racially charged incident. Specifically, Armstrong cites the fact that he was transferred to another shift and was informed, for the first time, of the Physical Fitness Weight Program. At that time Armstrong, who stood 6'3", weighed 360 pounds. Placed in the largest body-type category, he exceeded the maximum weight acceptable under the guidelines by 158 pounds. He was too fat to fit comfortably behind the wheel of the truck he was to drive. Although many fire fighters exceeded the average recommended weight, only Armstrong was <u>several</u> standard deviations from the mean in the "Very Poor" category.

Armstrong participated in the weight-loss program, hopeful that he would lose weight at the rate prescribed in the guidelines -- two to three pounds per month. The reverse happened; several months later he weighed 426 pounds. At this point the fire department removed him from active duty, advised him that his weight was a threat to his health, and asked him to lose two to

three pounds per week.  According to a memorandum written by his superior and, indicating receipt, signed by Armstrong, "[a] realistic long-range goal for you to attain in the future is to improve your current weight classification from the 'Very Poor' category to the 'Fair' category."  The memo cautioned of adverse health consequences if Armstrong exceeded the suggested average weight-loss rate of two to three pounds per week.  This caution proved entirely unnecessary.

Armstrong responded to these developments by filing a complaint with the EEOC alleging racial discrimination.  In exchange for dismissal of the complaint, the department agreed not to retaliate for the filing and to return Armstrong to active service, subject to his losing three to five pounds per month. Armstrong returned to driving, dieting, and exercising in November 1988, aware that he would be removed from active service if he failed to lose at least three pounds during any two consecutive months.

Although Armstrong again failed to lose weight at the agreed rate, the department did not immediately remove him from active service.  Rather, employing a carrot and stick approach, the department forged still another agreement in August 1989.  This agreement made clear, however, that if Armstrong did not adhere to his diet he automatically would be removed from active duty and would face an array of disciplinary measures, including termination.

Two months later Armstrong had gained 13 pounds.  Citing his

failure to abide by the agreement and the fact that his weight constituted a continuing threat to the health and safety of himself, his fellow fire fighters, and the citizens of Dallas, the department removed Armstrong from fire-fighting status. The department reported Armstrong's failure to abide by the weight-loss agreement to the Dallas Civil Service Department.

In September 1989 Armstrong was issued a letter of counseling for losing his fire-fighting coat. Armstrong responded to his removal from active service and the letter of counseling by filing another complaint with the EEOC, alleging retaliation for his earlier filing. After failing to persuade the EEOC, Armstrong retired with benefits and instituted the instant action.

Armstrong contends that the City has used his weight as a pretext for retaliation for his first EEOC complaint. He also claims that this retaliation violates the agreement reached after he withdrew that complaint. The district court found no genuine issue of material fact and rendered summary judgment in the City's favor. Armstrong timely appealed.

## Analysis

We review the grant of summary judgment *de novo*, applying the same standard as the district court. This case presents the opportunity for clarification of that standard in disparate treatment cases. In **McDonnell Douglas v. Green**,[1] the Supreme Court

_____

[1]    411 U.S. 792 (1973).

4

enumerated the order of proof in discrimination cases brought under the Civil Rights Act of 1964.[2] As in any other case in which the plaintiff seeks to enforce rights under a statute, he must "carry the initial burden under the statute of establishing" facts sufficient to warrant recovery.[3] At this point a rebuttable presumption arises.[4] Subsequent decisions clarify the effect and scope of this presumption.

The presumption obligates the defendant to articulate a legitimate, nondiscriminatory business reason for the challenged

---

[2] That proof system has been extended to a number of other statutory settings. E.g., **Hazen Paper Co. v. Biggins**, 113 S.Ct. 1701, 1706 (1993) ("In a disparate treatment case, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.") (citing **United States Postal Serv. Bd. of Gov. v. Aikens**, 460 U.S. 711 (1983)); **Patterson v. McLean Credit Union**, 491 U.S. 164, 186-87 (1989) (42 U.S.C. § 1981); **Humphreys v. Bellaire Corp.**, 966 F.2d 1037, 1043 (6th Cir. 1992) (ERISA, 29 U.S.C. § 1140).

[3] The plaintiff in a Title VII retaliation case, such as the instant case, has made a showing sufficient to create a presumption of discrimination and, all else being equal, to defeat a motion for directed verdict if he can show that (1) he participated in a statutorily protected activity; (2) was the object of adverse employment action; and (3) there is a causal nexus between the activity and the adverse action. **DeAnda v. St. Joseph Hosp.**, 671 F.2d 850 (5th Cir. 1982).

[4] More recently the Court has described this as an inference. E.g., **Wards Cove Packing Co., Inc. v. Antonio**, 490 U.S. 642, 670 (1989); **Price Waterhouse v. Hopkins**, 490 U.S. 228, 286 (1989); **Watson v. Fort Worth Bank & Trust**, 487 U.S. 977, 1004 (1988) (Blackmun, J., concurring); **United States Postal Serv. Bd. of Gov. v. Aikens**, 453 U.S. 902, 905 (1981) (Marshall, J. dissenting); **Board of Trustees of Keene State College v. Sweeney**, 439 U.S. 24, 24 (1978) (per curiam); **Furnco Constr. Corp. v. Waters**, 438 U.S. 567, 577 (1978); **International Brotherhood of Teamsters v. United States**, 431 U.S. 324, 358 (1977).

5

action.[5]  The burden of producing evidence from which a rational trier-of-fact could find discrimination, however, always remains with the plaintiff.[6]  In **United States Postal Service Board of Governors v. Aikens**,[7] the Court made clear that once the evidence is closed, whether the plaintiff offered proof sufficient to secure the presumption is not the determinant.[8]  Rather, the question is whether the employee has carried the ultimate burden of proving discrimination, an inquiry requiring consideration of all of the evidence, direct and circumstantial, relating not only to the plaintiff's oft-referred to *prima facie* case, but also the defendant's proffered reason(s) and any other relevant evidence.

A motion for summary judgment poses essentially the same legal

---

[5]     The defendant's burden in a summary judgment setting is not to persuade that the explanation is correct but, rather, to preserve a genuine factual issue with respect to the existence *vel non* of discrimination.  **Texas Dep't of Comm. Affairs v. Burdine**, 450 U.S. 248, 254 (1981); **Visser v. Packer Eng'g Assoc., Inc.**, 924 F.2d 655 (7th Cir. 1991) ("If the employer offers a pretext -- a phony reason -- for why it fired the employee, then the trier of fact is permitted, although not compelled, to infer that the real reason was age.")(citations omitted).

[6]     Hence, the employee does not necessarily prevail by producing some evidence of discrimination and disproving the employer's proffered explanation.  **Burdine**.  Rather, the employee may prevail, and indeed will prevail, upon persuading the trier of fact of the ultimate issue -- intentional discrimination.  See **Aikens**.

[7]     460 U.S. 711 (1983).  See also **Walther v. Lone Star Gas Co.**, 952 F.2d 119, 122 (5th Cir. 1992).

[8]     "The method suggested in **McDonnell Douglas** for pursuing this inquiry, however, was never intended to be rigid, mechanized, or ritualistic."  **Furnco Constr.**, 438 U.S. at 577.

6

inquiry as a motion for judgment as a matter of law[9] or a challenge to the sufficiency of the evidence on appeal.[10] The legal decision at each of these litigation junctures is whether the record evidence is so compelling that a particular party must prevail as a matter of law.[11]

The court's attention, when addressing a motion for judgment as a matter of law, must focus on the ultimate issue(s) in light of the controlling evidentiary burden.[12] The essential fact question in any employment discrimination case in which the plaintiff alleges disparate treatment is "not whether the plaintiff has established a *prima facie* case or demonstrated pretext, but 'whether the defendant has discriminated against the plaintiff.'"[13]

---

[9] "[T]his standard mirrors the standard for a directed verdict under Rule 50." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 250 (1986). Rule 50 now refers to this motion and the former motion for judgment notwithstanding the verdict as motions for judgment as a matter of law.

[10] **Granberry v. O'Barr**, 866 F.2d 112, 113 (5th Cir. 1988) (noting that standard of review of sufficiency of the evidence to support a jury verdict is the same as that applied in awarding directed verdicts or judgments notwithstanding the verdict).

[11] **Anderson**, 477 U.S. at 252.

[12] We no longer ask whether literally little evidence, <u>i.e.</u>, a scintilla or less, exists but, whether the nonmovant could, on the strength of the record evidence, carry the burden of persuasion with a reasonable jury. **Id.** at 251.

[13] **Grigsby v. Reynolds Co.**, 821 F.2d 590, 595 (11th Cir. 1987) (quoting **Nix v. WLCY Radio/Rahall Comm.**, 738 F.2d 1181, 1184 (11th Cir. 1984) (quoting in turn **Aikens**)). <u>See</u> <u>also</u> **MacDonald v. Eastern Wyoming Mental Health Ctr.**, 941 F.2d 1115 (10th Cir. 1991); **Haglof v. Northwestern Rehab., Inc.**, 910 F.2d 492, 495 (8th Cir.

7

This is not to suggest that the evidence which would be sufficient to create a presumption of discrimination at trial is somehow rendered irrelevant. To the contrary, that evidence might be conclusive. What is irrelevant, however, in the determination whether the evidence supports a judgment as a matter of law, is the stage of the unfolding of the proof. If the summary judgment record consists only of evidence that the plaintiff engaged in protected activity and, as a result, was treated adversely, the proof of discrimination would be conclusive.[14] Such a scenario is seldom presented; the employer typically offers evidence countering the plaintiff's proof, thus preserving the ultimate issue for the trier-of-fact. When either party moves for summary judgment, all of the evidence must be considered in the determination whether the plaintiff has sustained the burden of proving discrimination.

In the case at bar, the question before us is whether the evidence in the summary judgment record establishes, as a matter of law, that Armstrong was not the victim of discrimination by his employer. The once frequently repeated characterization of summary judgment as a disfavored procedural shortcut no longer appertains.[15]

---

1990) (Stuart, J. concurring); **Palucki v. Sears, Roebuck & Co.**, 879 F.2d 1568, 1570 (7th Cir. 1989).

[14]   **Burdine**, 450 U.S. at 254 n.7; **Mesnick v. G.E.**, 950 F.2d 816 (1st Cir. 1991), cert. denied, 112 S.Ct. 2965 (1992).

[15]   **Anderson**; **Celotex Corp. v. Catrett**, 477 U.S. 317 (1986); **Matsushita Elec. Indus. v. Zenith Radio Corp.**, 475 U.S. 574 (1986). Compare Judge Wisdom's opinion for this court in 1959. **Bruce v. Travelers Ins. Co.**, 266 F.2d 781, 786 (5th Cir. 1959).

Summary judgment is appropriate where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant. In all instances, the nonmovant is entitled to a fair opportunity to discover and produce evidence before the summary judgment record may be closed.[16] But in all instances, once a motion for summary judgment has pierced the allegations contained in either the complaint or answer, produce one must or face the potential of an adverse summary judgment.[17]

The only evidence available to support an inference of discrimination in the case before us is the temporal proximity of the alleged racial incident and the application of the weight guidelines.[18] The acceptance of this as a reasonable inference would not end our inquiry. Instead, where, as here, the employer offers a legitimate, nondiscriminatory explanation for the adverse action, the burden is on the employee to show that the explanation

---

[16] Fed.R.Civ.P. 56(f); **Celotex**, 477 U.S. at 322; <u>Cf</u>. **Aikens**, 460 U.S. at 716 n.5.

[17] "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." **Celotex**, 477 U.s. at 323.

[18] <u>Cf</u>. **Rath v. Selection Research, Inc.**, 978 F.2d 1087, 1090 (8th Cir. 1992) (discharge soon after protected activity is indirect proof of causal connection).

is merely a pretext for discrimination.[19] We conclude that the City established a legitimate, nondiscriminatory reason for its actions,[20] namely, Armstrong's excessive weight and the loss of his fire-fighting coat, and that the summary judgment record is devoid of evidence of pretext.

A studied review of the record convinces us that no reasonable factfinder could find Armstrong's weight to have been a pretext for discrimination. To the contrary, a reasonable juror would have to find that the decision to put Armstrong on inactive duty and to demand that he lose weight was mandated by his unacceptable physical size.

The department's demands that Armstrong comply with its weight guidelines, and its concomitant admonitions of adverse consequences if he failed to do so, were neither unjustified nor in any way related to his EEOC filing. There is no evidentiary support for Armstrong's claim that the fire department was retaliating against him for filing a complaint with the EEOC. His Title VII and breach of contract claims did not present a genuine issue of material fact

---

[19] **Burdine**. The City explained that Armstrong's excessive weight was the cause of its demand that he slim down. The explanation for the letter of counseling was similarly self-evident. Neither obesity nor misconduct is protected by Title VII.

[20] There is no suggestion that the guidelines were a vehicle for the expression of racial animus. They were applied to all members of the fire department in an unquestionably objective and neutral manner, based on such factors as weight, height, and elbow size. Armstrong was the only fire fighter who, based on these objective criteria, fell into the "Very Poor" category.

and summary judgment for defendant was appropriate.

AFFIRMED.