Greta SLAY Plaintiff

v.

Dan GLICKMAN, in his capacity as Secretary of the United States Department of Agriculture Defendant

No. CIV.A. 3:99–CV–752BN.

United States District Court,
S.D. Mississippi,
Jackson Division.

April 2, 2001.

William F. Jordan, Jordan, Daniels & Goree, PLLC, Jackson, MS, for Greta Slay, plaintiffs.

Cynthia Lynn Eldridge, U.S. Attorney's Office, Jackson, MS, for Dan Glickman, in capacity as Secretary of the United States Department of Agriculture, Jill Long Thompson, individually and in her capacity as undersecretary for Rural Development of the U S Department of Agriculture, George E. Irvin, Sr., individually and in his capacity as State Director of the Rural Economic and Community Development Division of the U S Department of Agriculture, Robert Collier, individually and in his capacity as Manager, Rural Economic and Community Development Division of the U S Department of Agriculture, defendants.

## REVISED OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the Court on the Motion of the Defendant for Summary Judgment. The court has considered the Motion, Response, Rebuttal, attachments to each, and supporting and opposing authority and finds that the Motion is well taken and should be granted.

### I. Factual Background and Procedural History

The Plaintiff, Greta Slay ("Slay"), was hired by the United States Department of Agriculture, Farmers Home Administration ("FmHA") on March 31, 1991. In 1993, Slay accepted a position as a District Program Clerk in the Brookhaven, Mississippi, area office. Robert Collier ("Collier") was Slay's immediate supervisor at the Brookhaven office.

The Plaintiff alleges that beginning in 1995, Collier made infrequent suggestive comments and, on a few occasions, touched her hands and hair. Slay also alleges that Collier propositioned her to engage in sexual intercourse on November 16, 1995, during a training seminar held in Meridian, Mississippi.[1] The Plaintiff does not allege any further acts of sexual harassment on the part of Collier after November 16, 1995. The Plaintiff does, however, contend that after she refused Collier's sexual advances, his criticism of her work performance escalated, he refused to allow her to attend training seminars, and denied her request for sixty-three hours of sick leave.

On or about May 14, 1996, Slay complained to Betty Price ("Price"), the Civil Rights Coordinator of Rural Development in Mississippi, about Collier's alleged acts of sexual harassment and retaliation. At the request of Price, Slay sent a letter to George Irvin ("Irvin"), the State Director, in which she detailed her complaints against Collier and requested an immediate transfer from the Brookhaven Office. On May 30, 1996, Irvin granted Slay's request and laterally transferred her to a vacant GS–5 position in Macon, Mississippi. On May 31, 1996, Slay contacted Irvin to protest the transfer to Macon, and to request either a lateral transfer to an office within sixty miles of Jackson, Mississippi, or to remain in the Brookhaven office until a position within sixty miles of Jackson became available. The Plaintiff maintains that her transfer to Macon, Mississippi, was done in retaliation for the complaint she filed against Collier.

---

1. The Defendant, for the purposes of the Motion for Summary Judgment only, has assumed the position that Collier did request Slay to engage in sexual intercourse on November 16, 1995. Collier denies this allegation.

On or about July 5, 1996, Slay was transferred to an office in Lexington, Mississippi, which is within sixty miles of Jackson. While employed at the Lexington office, Slay was temporarily reassigned to other county offices within the seven-county area supervised by Rural Development Manager, Winfred E. McAdams. Slay maintains that she was denied travel expenses when temporarily reassigned, and that her job performance and use of leave time was closely monitored. Slay maintains that these actions were conducted in retaliation for having complained about Collier's alleged harassment. On or about September 20, 1996, Slay filed a formal Complaint of Employment Discrimination with the United States Department of Agriculture.

In April of 1997, Slay received a Reduction in Force letter in which she was advised that she would be laid off in July of 1997. The reduction in force resulted from a State Restructuring Plan submitted to the Rural Development National Office on May 10, 1996. Under the State Restructuring Plan, all but five GS–5 employees were relieved from duty on July 6, 1997, statewide. All GS–5 positions were eliminated from the Brookhaven office, the office from which Slay was originally transferred. Slay maintains that she was terminated in July of 1997, in retaliation for filing an EEO complaint.

On October 22, 1999, the Plaintiff filed a Complaint seeking Declaratory and Injunctive Relief, Damages and Judicial Review in this Court alleging violations of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq.* Specifically, Slay asserts agents of the Defendant engaged in sexual harassment and retaliation in violation of federal law. The Defendant has moved for summary judgment on all of the claims asserted by the Plaintiff in the Complaint.

## II. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State Univ.,* 871 F.2d 545, 549 (5th Cir.1989); *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir.1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–24, 106 S.Ct. 2548. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir.1962).

## III. Analysis

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C.A. § 2000e–2(a)(1) (West 2000). In cases in which a claimant seeks to vicariously hold liable an employer for the alleged sexual harassment of her supervisor, a court must first determine whether the plaintiff has suffered a "tangible employment action." *See Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir.2000). If the court concludes that a tangible employment action was taken, the case is classified as one of "quid pro quo" harassment. *Id.* If, however, the court concludes that a tangible employment action was not taken, the claim is classified as one of "hostile environment" harassment. *Id.* 283–84. Slay contends that she was subject to both quid pro quo and hostile environment sexual harassment by her immediate supervisor Collier.

### 1. Quid Pro Quo Harassment

 To prevail on her claim of quid pro quo harassment, Slay must show that she has suffered a tangible employment action at the hands of her supervisor. *Id.* A tangible employment action is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). As a general rule, "only a supervisor, or other person acting with the authority of the company, can cause this sort of injury." *Id.* at 762, 118 S.Ct. 2257.

Slay asserts that she was subjected to quid pro quo harassment after she refused the sexual advances made by Collier. Slay contends that the tangible employment actions taken by Collier are: (1) he criticized her work performance, (2) he denied training opportunities, and (3) he questioned her about a request for advanced sick leave. *See* Complaint, ¶ 32. The Court will consider each allegation raised by Slay to determine whether the conduct about which she complains rises to the level of a tangible employment action.[2]

 Slay alleges that after she refused Collier's sexual advances, he "pointedly stepped up his criticism [of] her work before her peers during staff conferences." *See* Memorandum of Plaintiff, 2. The United States Court of Appeals for the Fifth Circuit has held, however, that disciplinary filings and supervisor reprimands are not considered ultimate employment actions within the context of Title VII. *See Messer v. Meno*, 130 F.3d 130, 140 (5th Cir.1997).

2. Although Slay contends that she was repeatedly transferred and eventually terminated from her employment with the FmHA, she

has not presented any evidence to show that Collier was responsible for these actions

Accordingly, the Court finds that the alleged criticism of Slay by Collier is not a tangible employment action for the purposes of a quid pro quo claim of sexual harassment.

■ Slay also alleges that she was denied training opportunities after she rejected Collier's sexual advance. Specifically, Slay contends that she was denied the opportunity to attend two training classes in April and May of 1996, one related to the servicing of Multi–Family Housing loans, the other related to Community Programs training. The Fifth Circuit has held "that an employer's refusal to allow a certain employee to attend training sessions [does] not effect a material adverse change in the terms or conditions of the plaintiff's employment, and thus [does] not constitute an ultimate employment decision." *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 406 (5th Cir.1999) (citing *Dollis v. Rubin,* 77 F.3d 777 (5th Cir. 1995)). In *Shackelford,* the Fifth Circuit found that the denial of training in an area peripheral to the claimant's main duties would not " 'tend to' result in a change of employment status, benefits or responsibilities. Thus a denial of such training is not an adverse employment action covered by Title VII." *Id.* (citing *Ellerth,* 524 U.S. at 742, 118 S.Ct. 2257).

Slay testified that her job did not involve much interaction in the area of Community Programs. *See* Motion of Defendant, Exhibit F, 51–52. The Court finds that as Slay did not work in the area of Community Programs, training in this area would be peripheral to her main duties as Clerk in the area of Multi–Family Housing. Therefore, the denial of training in the area of Community Programs is not a tangible employment action within the scope of Title VII.

Slay also testified that she worked as a Clerk in the area of Multi–Family Housing. *See Id.* Slay, however, has not made any claim that training in the servicing of Multi–Family Housing loans, which· was the subject of the training meeting, was necessary for her position as a Clerk. Further, Slay has not presented any evidence to show that the denial of such training would 'tend to' affect her employment as a Clerk. Accordingly, the Court finds that Slay has failed to present evidence to show that there exists a genuine issue of material fact with regard to whether the alleged denial of training opportunities by Collier constitutes a tangible employment action for the purposes of her quid pro quo claim of sexual harassment.

■ Slay additionally contends after she rejected Collier's sexual advance, she was treated differently with respect to her request for advanced sick leave. The record shows that Slay, on May 14, 1996, requested an advance of sixty-three hours sick leave when she returned to duty after sustaining injuries in a motor vehicle collision. *See Id.,* Exhibit F, Deposition Exhibit 8. Collier testified that he initially suggested that Slay use her annual leave. *See Id.,* Exhibit M (Affidavit of Collier). The record also shows that on May 14, 1996, the same day on which Slay requested advanced sick leave, Collier contacted Bill Lott ("Lott") the Chief of Administrative Programs, for advice with regard to whether Slay's claim warranted the grant of such leave. *See Id.,* Exhibit F, Deposition Exhibit 8. Lott, on May 16, 1996, informed Collier that he could, within his "leave approval authority," grant the first forty hours requested, but "in order to make a decision on whether to grant the leave ... documentation; i.e. medical certificate or other administratively acceptable evidence as to the reason for the absence, is required." *Id.* After receiving the memorandum from Lott, Collier requested that Slay provide the required

medical certification and, once the documentation was provided, Collier granted Slay forty hours of advanced sick leave as allowed under his leave approval authority. Collier granted the advanced sick leave within one week of Slay's initial request.

The Fifth Circuit has recognized that ultimate employment decisions include the act of granting leave. *See e.g., Burger v. Central Apartment Mgmt., Inc.,* 168 F.3d 875, 878 (5th Cir.1999) (citing *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 707 (5th Cir.1997)). The record shows that Collier, in requesting advice from the Chief of Administrative Programs, took appropriate steps to determine whether Slay was entitled to advanced sick leave. The record also shows that Collier acted quickly on the advice he received, and granted Slay the maximum hours of advanced sick leave allowed under his leave approval authority within one week of her initial request.

Slay, however, argues that advanced sick leave was routinely granted to other employees, and that her request for leave was treated differently because she had refused Collier's sexual advance. The Plaintiff, however, has not provided any evidence to support this allegation. The Plaintiff has not presented any evidence to show that other employees had ever requested advanced sick leave or that such leave was granted in lieu of proper documentation from a treating physician. Additionally, the Plaintiff has not produced evidence to show that requests by other employees for advanced sick leave were granted immediately, or within a period of time less than one week. Accordingly, the Court finds that the Plaintiff has failed to show that there exists a genuine issue of material fact with regard to whether the grant by Collier of Slay's request for advanced sick leave within one week of the date requested constitutes a tangible employment action for the purposes of a quid

pro quo claim of sexual harassment under Title VII. Additionally, the Court finds that the Motion of the Defendant for Summary Judgment on Slay's quid pro quo claim of sexual harassment should be granted, and that the quid pro quo claim of sexual harassment should be dismissed with prejudice.

## 2. Hostile Environment Harassment

■■■■ To prove a case of hostile environment sexual harassment, the claimant must show that "the actions ascribed to the supervisor ... constitute severe or pervasive sexual harassment." *Casiano,* 213 F.3d at 284. If the conduct of the supervisor is found to be "severe and pervasive," his employer is vicariously liable for his acts of sexual harassment unless the employer can prove that "(1) [it] exercised reasonable care to prevent and correct promptly any such sexual harassment, and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* (citing *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257).

■■■■ To establish that a claimant's work environment was sexually hostile, there must a showing of: "(1) [s]exually discriminatory intimidation, ridicule and insults, which are (2) sufficiently severe or pervasive that they (3) alter the conditions of employment and (4) create an abusive working environment." *DeAngelis v. El Paso Mun. Police Officers Ass'n,* 51 F.3d 591, 594 (5th Cir.1995) (citing *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). To determine whether a claimant's working environment was hostile or abusive, the court must consider all circumstances of the case including "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [her] work performance." *Id.* When determining whether the supervisor's acts created a hostile or abusive environment, a trial court must apply an objective standard. *Id.* Therefore, the court must find that a reasonable person would find that the complained of conduct would create a work environment that was hostile or abusive.

The Plaintiff avers that prior to November 16, 1995, "Collier would occasionally make suggestive comments regarding my figure, how my clothes fit, etc., and on a few occasions, touch[ed] my hands or my hair." *See* Memorandum of Plaintiff, Exhibit A (Affidavit of Slay), 2. The Plaintiff, in her affidavit, also indicated that she "never attached[ed] any significance to this conduct" until November 16, 1995. With regard to these complaints, the Plaintiff admitted that the alleged offensive comments and/or contacts were infrequent. Additionally, the Court finds that as Slay did not attach any significance to these comments or contacts, a reasonable person would likewise not find them to be either severe or physically threatening or humiliating. Finally, the Plaintiff has not presented any evidence to show that these alleged offensive contacts interfered with her work performance. Accordingly, the Court finds that the occasional comments and contacts that occurred prior to the November 16, 1995, incident involving the Plaintiff and Collier did not create a sexually hostile or abusive work environment.

Slay alleges that Collier propositioned her to engage in sexual intercourse on November 16, 1995. The Plaintiff has not provided any evidence to show that Collier, after November 16, 1995, again propositioned her or otherwise made any sexually derogatory or harassing comments.[3] The Court, therefore finds that the Plaintiff has alleged only a single occurrence of sexually discriminatory conduct by her supervisor that she found to be offensive.

▮ The Fifth Circuit has held that "offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in 'terms and conditions of employment.'" *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 264 (5th Cir.1999) (citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). Instead, the finding of a sexually hostile work environment is typically reserved for cases that "involved patterns or allegations of extensive, longlasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiff's work environment." *Id.* (summary of United States Supreme Court cases omitted). The Court, after considering the allegation of Slay in the light most favorable to her, finds that a reasonable person would not conclude that the alleged one-time proposition by Collier, absent any other sexually discriminatory conduct, would create a hostile or abusive working environment.[4]

---

3. Although Slay contends that her work performance was criticized by Collier, and that she was treated differently with regard to training and advance sick leave, she has not provided any evidence to show that these actions were taken because of her gender. Slay testified that Jimmy Culpepper, a white male, was also criticized "quite often" by Collier, and that other female employees attended training sessions. *See* Motion of the Defendant, Exhibit F, 49–52.

4. The Court cautions that this opinion should not be construed as creating a per se rule that a one-time propositon for sexual intercourse could never rise to the level of creating a hostile or abusive work environment for the purposes of Title VII. The Court expressly limits its findings to the facts presented in this case.

Additionally, the Court finds that a reasonable individual would not conclude that the one-time proposition in combination with the other "occasional" comments and contacts complained of by Slay would create a hostile or abusive work environment.

■■■ Even if the Court were to find that the actions complained of by Slay rise to the level of creating a severe or hostile work environment, the Defendant is protected from liability for Collier's alleged acts of sexual harassment under the affirmative defense articulated by the Fifth Circuit in *Casiano*, 213 F.3d at 278. Under this defense, an employer will not be held vicariously liable if it can establish that "(1) [it] exercised reasonable care to prevent and correct promptly any such sexual harassment, and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* (citing *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257). The Defendant has presented evidence to show that it maintained a policy regarding the prohibition of sexual harassment, *see* Motion of the Defendant, Exhibit T, and that Slay knew that complaints of sexual harassment were to be reported to the Equal Employment Opportunity ("EEO") counselor Betty Price. *Id.*, Exhibit F, 117–18. The Defendant has also produced evidence to show that upon receiving Slay's complaint, a Personal Conduct Investigator with the United States Department of Agriculture began an immediate investigation of Colliers' conduct for the Agency. A second investigation of the allegations made by Slay was later conducted by an EEO investigator. Finally, the Defendant showed that within two weeks of Slay's initial complaint to Price, she was transferred, as she requested, from the Brookhaven office.

The Plaintiff has not offered any evidence to contradict the evidence presented by the Defendant. Therefore, the Court finds that the Plaintiff has failed to establish a genuine issue of material fact with regard to whether the Defendant exercised reasonable care to prevent and correct promptly sexual harassment in the workplace.

■■■ To satisfy the second prong of the affirmative defense, the Defendant must show that Slay "unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." The Defendant has presented evidence to show that Slay did not file a EEO complaint, or notify the Civil Rights Coordinator for approximately six months following the November 16, 1995, incident.[5] *See Id.*, Exhibit F, 115–16. The Defendant has also produced evidence to show that Slay was a member of the EEO Committee at the FmHA and was aware of the reporting procedures used by that Agency. The Plaintiff has not presented any evidence to show that she reported her allegation of sexual harassment to the Civil Rights Coordinator or any other member of the administration for approximately six months following the November 16, 1995, incident. Accordingly, the Court finds that Slay has failed to produce evidence to show that there exists a genuine issue of material fact with regard to whether she "unreasonably failed to take advantage of any preventative or corrective opportunities provided by the [Defendant] or to avoid harm otherwise." Additionally, the Court finds that there does not exist a genuine issue of material fact as to whether the Plaintiff was subject to hostile environment sexual harassment or whether the

---

5. Although Slay maintains that she informed her co-workers of Collier's proposition, she has not presented evidence to show that she reported the incident to an individual authorized to take corrective measures until on or about May 14, 1996.

Defendant may avail itself of the affirmative defense to vicarious liability. Therefore, the Court finds that the Motion of the Defendant for Summary Judgment on the hostile environment sexual harassment claim should be granted, and that the hostile environment sexual harassment claim should be dismissed with prejudice.

### 3. Retaliation Claim

To establish a prima facie case of retaliation, a claimant must show that: "(1) [she] engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between the protected activity and the adverse employment action." *Mattern*, 104 F.3d at 705. *See also Shackelford*, 190 F.3d at 407–08. In the event that a claimant establishes a prima facie case of retaliation, the burden of proof is shifted to the employer who "must then articulate a legitimate non-discriminatory reason for the challenged employment action." *Shackelford*, 190 F.3d at 408. In the event that the employer is able to articulate a legitimate, non-discriminatory reason, "the inference of discrimination raised by the *prima facie* case" is dropped, and "summary judgment is appropriate unless [the claimant] can prove that the [employer's] rationale is pretextual." *Id.*

The record clearly establishes that Slay filed a complaint with the EEO thereby satisfying the first prong of her *prima facie* case. Slay, to satisfy the second prong, must show that the Defendant subjected her to an adverse employment action after the EEO complaint was filed. Slay asserts four general incidents she contends demonstrate adverse employment actions: (1) a transfer to Macon, Mississippi, and then Lexington, Mississippi, as opposed to Jackson, Mississippi, as she requested, (2) temporary assignments to other county offices while employed in Lexington, Mississippi, (3) close monitoring of sick leave and annual leave, and (4) termination during a reduction in force.[6]

Under Fifth Circuit precedent, an "adverse employment action," for the purpose of a retaliation claim under Title VII, has historically been synonymous with an "ultimate employment decision" for the purpose of a quid pro quo sexual harassment claim under that statute. *See Burger*, 168 F.3d at 878. An "ultimate employment decision" in the context of Title VII includes such actions as: "hiring, granting leave, discharging, promoting, and compensating." *Id.* (citing *Mattern*, 104 F.3d at 707). The United States Supreme Court expanded the definition of the term "tangible employment action," as that term relates to claims of hostile environment sexual harassment under Title VII, in *Burlington Industries, Inc. v. Ellerth.* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Under the *Ellerth* definition, "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 761, 118 S.Ct. 2257. The Fifth Circuit has not rendered its decision with regard to whether *Ellerth* "lowers the bar as to what qualifies as an adverse employment action" for the purposes of a retaliation claim under Title VII. *See Watts v. Kroger Co.*, 170 F.3d 505, 511 n. 5 (5th Cir.1999). For the purposes of this Motion, the Court will apply the standard set forth in *Ellerth* to determine whether any of the conduct about which Slay complains constitute "ad-

---

**6.** Slay contends that had she not been subjected to sexual harassment by Collier, she would not have been transferred out of the Brookhaven, Mississippi, office, and would not have been laid off.

verse employment actions" under Title VII.

Slay contends that her transfer to Macon, Mississippi, located approximately three hours from her home, was done in retaliation for the EEO complaint she filed. Slay also contends that Irvin indicated she would remain in Macon "as long as she continued with th[e] counseling from EEO on this matter." Memorandum of Plaintiff, 3. In response to this allegation, the Defendant has presented the sworn statement of Irvin in which he indicates that at the time Slay requested an immediate transfer, the GS–5 position in Macon "was the nearest vacant position at her grade level." *See* Motion of the Defendant, Exhibit Q (Affidavit of Irvin). Irvin also informed Slay that the "cost of her reassignment and household goods [would] be paid for by the Agency," and that she would be relocated when a position closer to Jackson, Mississippi, became available. *Id.*, Exhibit Q, Affidavit Exhibits 2 and 4 (Irvin indicated that he "also informed [Slay] that as soon as [he] could relocate [her] to a position ... closer within [her] specified commuting distance, [he] would do so."). Approximately one month after Slay was transferred to Macon, Mississippi, she was permanently assigned to the Lexington, Mississippi, office which was closer to her home, than the office in Brookhaven, Mississippi.

■ The Court finds that Slay's transfer to Macon, Mississippi, is not a "tangible employment action" under *Ellerth* as there is no evidence in the record to show that she was given significantly different responsibilities or that the transfer caused a significant change in the benefits she received. To this regard, the Fifth Circuit has found that "a purely lateral transfer is not an adverse employment action." *Burger*, 168 F.3d at 879.

Even if the Court were to find that Slay's transfer constituted a tangible em-

ployment action, and that it was causally connected to her filing of the EEO complaint, thereby satisfying the elements required to establish a *prima facie* case of retaliation, she has not presented any evidence to show that the explanation offered by the Defendant for that transfer was a pretext for discrimination. The evidence in the record shows that Slay requested an immediate transfer from the Brookhaven office and that she was promptly transferred to the nearest vacant GS–5 position available at the time of her request. The evidence also shows that she was transferred to an office closer to her home when a position became available approximately one month later. Slay has not presented any evidence to show that another GS–5 position was vacant either at the time she was transferred or within the four-week period she was employed in Macon, Mississippi. The Court finds that Slay has not presented any evidence to show that there exists a genuine issue of material fact with regard to whether the legitimate, non-discriminatory explanation proffered by the Defendant was a pretext for retaliation.

Slay also contends that the Defendant retaliated against her by temporarily reassigning her to other offices while she was employed in Lexington, Mississippi. The Court finds that this activity does not constitute a tangible employment action as it does not involve a "reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Likewise, the Court finds that Slay's allegation that her sick leave and annual leave were closely monitored are not tangible employment actions under the *Ellerth* standard.

■ Finally, Slay contends that her employment was terminated on July 6, 1997, in retaliation for filing an EEO complaint. Termination of employment constitutes a tangible employment action there-

by satisfying the second prong of a *prima facie* case of retaliation under Title VII. Slay must now show that a "causal connection exists between the protected activity and the adverse employment action." *Mattern,* 104 F.3d at 705.[7] Slay apparently alleges that because her employment was terminated after she filed an EEO complaint, the two are causally related.

The Fifth Circuit has found that the "temporal proximity" between filing a complaint with the EEOC and the adverse employment event may, in some cases, provide sufficient evidence to satisfy the "causal connection" prong of a *prima facie* case of retaliation. *See e.g., Armstrong v. City of Dallas,* 997 F.2d 62, 67 (5th Cir. 1993); *see also Rath v. Selection Research, Inc.,* 978 F.2d 1087, 1090 (8th Cir.1992) (holding that discharge soon after protected activity is indirect proof of causal connection). The Court finds that Slay has not produced sufficient evidence to show that the termination of her employment on July 6, 1997, was causally connected to the filing of her EEO complaint on or about May 14, 1996.

▇▇ Further, even if the Court found that Slay had established a *prima facie* case of retaliation, the Defendant has presented a legitimate, non-discriminatory explanation for its actions. The Defendant has presented evidence to show that Slay was relieved of her employment duties as part of a reduction in workforce carried out under a comprehensive State Restructuring Plan which had been submitted for approval to the Rural Development national office on May 10, 1996. Under this plan, twenty-four level GS–5 employees were relieved from duty, and only five level GS–5 positions remained in the state. *See* Memorandum of Defendant, 14, 28. As the Defendant has presented a non-

retaliatory reason for Slay's termination, Slay must show that the reason proffered is merely pretextual. *See Chaney v. New Orleans Pub. Facility Management,* 179 F.3d 164, 167 (5th Cir.1999).

Slay, however, has not presented any evidence to show that the explanation proffered by the Defendant was a pretext for discrimination. Although Slay alleges that had she not "been subjected to discrimination and out of necessity transferred, she would not [have been laid off]," she has not presented any evidence to show that her employment would not have been terminated had she remained at the Brookhaven office. *See* Motion of Defendant, Exhibit P, ¶ 22 (indicating that five GS–5 employees were retained during the reduction in force and were employed in the cities of Prentiss, Ridgeland, Purvis, Canton, and Greenville, Mississippi). Accordingly, the Court finds that the Plaintiff has failed to produce evidence to show that there exists a genuine issue of material fact with regard to whether the explanation proffered by the Defendant with regard to the termination of Slay's employment was a pretext for discrimination. The Court therefore finds that the Plaintiff has failed to show that there exists a genuine issue of material fact with regard to whether the Defendant retaliated against her in violation of Title VII. The Court additionally finds that the Motion of the Defendant for Summary Judgment on the retaliation claim should be granted, and that this claim should be dismissed with prejudice.

### IV. Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of the Defendant for Summary Judgment [20–1] is hereby granted, and

---

7. "The burden of establishing the 'causal link' in the prima facie case is much less onerous than the burden of proving 'but for' causation required for the ultimate issue of retaliation." *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122 n. 8 (5th Cir.1998).

that all claims asserted against the Defendant should be dismissed with prejudice.

A final judgment in accordance with Rule 58 of the Federal Rules of Civil Procedure shall be entered this day.