**Starla Sue STEWART**

v.

**HOUSTON LIGHTING & POWER COMPANY.**

No. Civ.A. G–96–566.

United States District Court, S.D. Texas, Galveston Division.

March 19, 1998.

Scott Adam Sanes, Houston, TX, R. Keith Vaughan, Carabin and Shaw, San Antonio, TX, for Starla Sue Stewart, plaintiff.

Maria Wyckoff Boyce, Matthew P. Eastus, Baker & Botts, Houston, TX, for Houston Lighting & Power Company, defendant.

### ORDER GRANTING SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff Stewart brings this action against her former employer, Houston Lighting & Power (HL & P),[1] alleging (1) sexual harassment, sex discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the Texas Labor Code; (2) compensation discrimination in violation of Title VII and the Texas Labor Code; (3) wrongful discharge; (4) negligence; (5) negligent hiring, supervision, and retention; and (6) intentional infliction of emotional distress. Now before the Court is Defendant's Motion for Summary Judgment, filed December 1, 1997. For the reasons that follow, Defendant's Motion is **GRANTED**, and all of Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

### I. FACTUAL BACKGROUND

Plaintiff Stewart was hired in June of 1986 to work at Defendant's South Texas Project Nuclear Electric Generating Station ("STP") as an auxiliary operator in the Reactor Operations Division. For the first three years, Stewart was an apprentice operator. In 1989, she became a full journeyman Reactor Plant Operator. She held that position until her resignation in May of 1995.

On September 29, 1995, Stewart filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging sex discrimination. Specifically, Stewart alleged in the EEOC charge that she was denied promotions, subjected to sexual harassment, and forced to resign due to "harassment, humiliation, and being undermined by co-workers."

From Stewart's deposition and personal statement submitted with her EEOC charge, Plaintiff's complaints consist essentially of the following specific instances of conduct: (1) when she was hired, she had to take a "reach" test that men did not have to take; (2) in July 1989, a supervisor swapped her for a good operator, calling Stewart and other women "no load operators"; (3) from 1986–1987, women had to use "porta potties" instead of getting indoor bathroom facilities during the construction of a new unit; (4) during construction of the unit, men walked through the women's restroom as a shortcut to their offices; (5) Stewart received "unfair" evaluations from her supervisors between 1987 and 1989; (6) a male supervisor yelled at her for inadequately getting steam out of a unit in 1988 or 1989; (7) another woman was told to go to another unit when she tried to change in an area where men were sleeping; (8) a male supervisor "chewed her out" because she was taking too long performing her operator rounds; (9) she was sent alone on tasks designed for several people; (10) a female co-worker quit and told Stewart that she was tired of the way she was being treated; (11) a male allegedly made "snide comments" about her in her absence, and her supervisor did nothing about it; (12) a co-worker treated another woman on her crew better than Stewart because the other wom-

---

[1]. Plaintiff's First Amended Complaint was filed on September 18, 1996. At that time, this action was part of a larger action, *Logue et al. v. Houston Lighting & Power Co.*, Civil Action No. 96–251, brought by several female employees of HL & P, alleging similar violations but different fact scenarios. The case was later severed into individual actions because of the individual fact situations applicable to each Plaintiff.

an "cooked for the crew and acted more feminine"; (13) Stewart was put in positions "on numerous occasions" where her ability as an operator was called into question; (14) she was never promoted even though she had a "perfect record" and received "superior" ratings on several evaluations; (15) only one woman was ever promoted to Control Room Operator at STP, and "it was obvious that many of the men operators could not tolerate the thought of a woman in a position of authority over them"; (16) at a meeting, a Vice President of HL & P responded to one of her questions in an agitated manner because he was upset about her use of "we" for operators and "they" for management, and that he specifically targeted women to pick on during meetings; (17) in 1994 she was required to write up an incident where she lost her radiation dosimetry badge, but a man who lost his did not have to write it up; (18) that she was not thanked as profusely as were men for her similar efforts; (19) during a refueling outage in 1995, men refused to go on training sessions with her but would fight over who got to go with less experienced men; (20) finally, she was ultimately forced to resign because she had to "work twice as hard in order to be thought half as good."

Stewart received a Notice of Right to Sue from the EEOC on January 29, 1996. This lawsuit was filed in the 23rd Judicial District Court of Matagorda County, Texas on March 1, 1996. It was timely and properly removed to this Court on May 13, 1996.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set

forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.

Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable factfinder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.*, 799 F.Supp. 691 (S.D.Tex.1992) (summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

## III. DISCRIMINATION, HARASSMENT, AND RETALIATION CLAIMS UNDER TITLE VII AND THE TEXAS LABOR CODE [2]

### A. *Timeliness Under the EEOC Statute of Limitations*

■ At the outset, the Court notes that Title VII requires a plaintiff to file a charge with the EEOC within 300 days of the alleged unlawful employment practice: December 4, 1994 in this case.[3] *See* 42 U.S.C. § 2000e–5(e); *Mennor v. Fort Hood Nat'l Bank*, 829 F.2d 553, 556 (5th Cir.1987). The overwhelming majority of the allegations

---

**2.** Plaintiff also asserts violations of the Texas Labor Code based on the same work-related incidents described above. Because Texas courts look to federal precedent when analyzing such claims, *see, e.g., Cervantez v. Bexar County Civil Service Comm'n*, 99 F.3d 730, 733 n. 6 (5th Cir.1996); *Leatherwood v. Houston Post Co.*, 59 F.3d 533, 536 n. 5 (5th Cir.1995), Plaintiff's

Texas Labor Code claims are analyzed the same as, and dismissed concurrently with, her Title VII claims.

**3.** Plaintiff filed her claims with the EEOC on September 29, 1995.

made by Plaintiff occurred well before December 4, 1994. Although Plaintiff argues otherwise, the "continuing violation" exception clearly does not apply in this case. For that exception to apply, Plaintiff must show that actionable conduct occurred both outside and inside the limitations period, but Plaintiff, as a reasonable employee, did not know or should not have known that the time-barred acts were discriminatory until within 300 days of filing an EEOC claim. *See Abrams v. Baylor College of Medicine,* 805 F.2d 528, 532–34 (5th Cir.1986).

The Court understands that a reasonable employee will not necessarily conclude that her employer is an illegal discriminator on the basis of one conversation and one at least arguably nondiscriminatory act. *See Glass v. Petro-Tex Chem. Corp.,* 757 F.2d 1554, 1562 (5th Cir.1985). However, in this case, several of the isolated incidents that allegedly constitute discrimination occurred prior to 1992. In fact, Plaintiff alleges that she was passed over for promotion to Reactor Operator ("RO") one time each year, beginning in 1990. A reasonable person who is rejected for a promotion for which he or she is otherwise qualified, and who also has experienced discrimination such as the Plaintiff alleges, should be put on notice of the discrimination. Furthermore, it is telling that Plaintiff failed to check the "Continuing Violation" box on her EEOC charge. The Court finds that the continuing violation exception does not apply to this case. Thus, to the extent the alleged discriminatory actions occurred before December 4, 1994, they are time-barred.

B. *Intentional Discrimination Under the McDonnell Douglas/Burdine Framework*

Notwithstanding the time bar to the allegations occurring before December 4, 1994, the Court addresses Plaintiff's claims of promotion discrimination on their merits. Plaintiff alleges she was discriminated against because of her sex. Section 703(a)(1) of Title VII provides in relevant part:

It shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(1). Title VII also prohibits an employer from retaliating against any of its employees for asserting their rights under Title VII. *See id.* § 2000e–3(a).

Plaintiff's Title VII claims require a showing of intentional discrimination. To determine whether intentional discrimination exists, the Fifth Circuit applies the burden-shifting analytical framework first established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See, e.g., Long v. Eastfield College,* 88 F.3d 300, 304 (5th Cir.1996) (applying the *McDonnell Douglas* analysis to Title VII unlawful retaliation cases); *Johnson v. Chapel Hill Indep. Sch. Dist.,* 853 F.2d 375, 381 (5th Cir.1988) (applying *McDonnell Douglas* to a differential treatment case brought pursuant to Title VII).[4]

Under this framework, the Court employs a three-part test designed to determine a defendant's motivation in taking the challenged action. *See McDonnell Douglas,* 411 U.S. at 803–04, 93 S.Ct. at 1824–25; *Burdine,* 450 U.S. at 252–54, 101 S.Ct. at 1093–94. First, the plaintiff must establish a *prima facie* case by proving the elements of the discrimination claim. If the plaintiff proves her *prima facie* case, a presumption of discrimination arises. *See Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 957 (5th Cir.1993). The burden of production then shifts to the defendant to rebut this presumption by articulating a legitimate, nondiscriminatory reason for the alleged discriminatory action. *See Olitsky v. Spencer Gifts, Inc.,* 964 F.2d 1471, 1478 n. 19 (5th Cir.1992). A defendant meets this burden by proffering admissible evidence of an explanation that would be legally sufficient to justify a judgment for the defendant. *See Guthrie v. Tifco Indus.,* 941

**4.** *McDonnell Douglas* was refined in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and was further clarified in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

F.2d 374, 376 (5th Cir.1991). This does not require the defendant to persuade the trier of fact that there was no intentional discrimination; the defendant need only produce evidence on that point. *See Hicks,* 509 U.S. at 507–08, 113 S.Ct. at 2747–48.

Finally, if the defendant satisfies this burden, the presumption of discrimination established by the plaintiff's *prima facie* case is defeated. *See Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10. The plaintiff's burden of persuasion then arises, and he or she must produce evidence that the defendant's proffered reasons are mere pretexts, the real reason for the action having been based on an impermissible *animus. See id.* at 256, 101 S.Ct. at 1095; *Bodenheimer,* 5 F.3d at 959. The plaintiff may succeed at this juncture, either by persuading the Court that a discriminatory reason more likely motivated the defendant, or by showing that the defendant's proffered explanation is not entitled to credence. *See Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. The ultimate burden of proof of intentional discrimination rests at all times with the plaintiff. *See Hicks,* 509 U.S. at 507, 113 S.Ct. at 2749.

██ Summary judgment is particularly appropriate when the Court is evaluating evidence at the "pretext" stage of the *McDonnell Douglas* analysis.

'[I]t is relatively easy both for a plaintiff to establish a *prima facie* case and for a defendant to articulate a legitimate, non-discriminatory reason for his decision.' ... In the context of summary judgment ..., the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext.

*Britt v. Grocers Supply Co.,* 978 F.2d 1441, 1450 (5th Cir.1992) (quoting *Amburgey v. Corhart Refractories Corp.,* 936 F.2d 805, 811 (5th Cir.1991) (citations omitted)). Speculation and belief are insufficient to create a fact

issue as to pretext. *See Britt,* 978 F.2d at 1451. Nor can pretext be established by mere conclusory statements of a plaintiff who feels that she has been discriminated against. *See E.E.O.C v. Exxon Shipping Co.,* 745 F.2d 967, 976 (5th Cir.1984).

In this case, Plaintiff alleges that, because of her sex, she was denied promotions and was treated differently than males in the workplace. To establish a *prima facie* case of sex discrimination based on a promotion denial, a plaintiff must demonstrate that (1) she applied for and was qualified for a job for which the employer was seeking applicants; (2) despite her qualifications, she was rejected; and (3) after her rejection, the position remained open and the employer continued to seek applicants from persons of Plaintiff's qualifications. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444, 448 (5th Cir.1996). Similarly, to establish a *prima facie* case under Title VII based on alleged differential treatment, a plaintiff must demonstrate that (1) she belongs to a protected group, *i.e.,* she is female; (2) that she was qualified for her position; (3) that she suffered an adverse employment action; and (4) that she suffered the adverse action due to her membership in the protected class. *See Ward v. Bechtel Corp.,* 102 F.3d 199, 202 (5th Cir.1997); *cf. McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13.

As discussed above, adverse employment actions under § 2000e–2(a)(1) encompass a broader range of conduct than those under Title VII's retaliation provision. They include discharges, demotions, refusals to hire, refusals to promote, and reprimands. *See Pierce v. Texas Dep't of Criminal Justice, Institutional Div.,* 37 F.3d 1146, 1149 (5th Cir.1994) (interpreting the anti-retaliation provision of Title VII).[5]

5. The Seventh Circuit has defined with specificity "adverse employment action" as:

[A] material adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced

by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993).

Moreover, § 2000e–2(a)(1) "reaches acts which merely 'would tend' to affect the employee; obviously, the way in which the employee may be affected in this subpart is much broader [than the anti-retaliation provision of Title VII]." *Eastman Kodak,* 104 F.3d at 709; *see also Forsyth v. City of Dallas,* 91 F.3d 769, 773 (5th Cir.1996) (holding that the transfer of police officers from intelligence division to uniformed night patrol constituted a demotion), *cert. denied sub nom. City of Dallas v. Kirks,* — U.S. —, 118 S.Ct. 64, 139 L.Ed.2d 26 (1997); *LaPierre,* 86 F.3d at 448 (holding that a demotion from service manager to mechanic created a fact issue as to whether an adverse employment action had occurred); *Rizzo v. Children's World Learning Ctrs., Inc.,* 84 F.3d 758, 765 (5th Cir.1996) (holding that an employer's decision to lower a disabled employee's hours, to require her to work a "split shift," and to change her position from bus driver to cook produced a fact issue as to whether there had been an adverse employment action); *Polanco v. City of Austin,* 78 F.3d 968, 980 (5th Cir.1996) (upholding jury finding that Hispanic police officer was disciplined more severely than his Caucasian counterpart); *Click v. Copeland,* 970 F.2d 106, 109 (5th Cir.1992) (holding that simply because sheriff deputies received no decrease in pay did not mean that their transfers were not demotions); *Fyfe v. Curlee,* 902 F.2d 401, 404 (5th Cir.1990) (holding that a transfer to a less desirable but equally paying job constituted a demotion); *Levin v. Delta Air Lines, Inc.,* 730 F.2d 994, 996 (5th Cir.1984) (holding that placing pregnant flight attendants on ground duty was an adverse employment action).

To the extent they are not time-barred, and understanding that Defendant is not liable for isolated incidents of which it had no knowledge, the Court finds that a reasonable jury *could* find that at least one of the multitude of complaints proffered by Plaintiff constitute a "limitation" of employment which deprived or "tended to deprive" Plaintiff of "opportunities," or at the very least adversely affected her status. *See* 42 U.S.C. § 2000e–2(a)(1). This finding is supportable only by giving broad latitude to Plaintiff's own affidavit, and assuming all of her conclusory allegations to be true. *See Armstrong v. City of Dallas,* 997 F.2d 62, 66 n. 12 (5th Cir.1993) ("We no longer ask whether literally little evidence, i.e., a scintilla or less, exists but, whether the nonmovant could, on the strength of the record evidence, carry the burden of persuasion with a reasonable jury.").

Assuming for the moment that Plaintiff has established a *prima facie* case,[6] the Court finds Defendant's proffered reasons for its actions legitimate and nondiscriminatory.

First, Defendant has submitted evidence establishing that Plaintiff was not discriminated against, but was simply not qualified for the position of Reactor Operator ("RO"). Defendant points out that Stewart never applied for the Licensed Operator Training ("LOT") class required to become an RO. Next, Defendant has produced evidence that, compared to those who were selected for LOT class, Stewart's credentials were far inferior. In fact, Stewart's credentials were also inferior to candidates who were not selected for the LOT class, at least three of whom were men. For instance, Stewart had no prior nuclear experience, no supervisory experience, and only one recommendation from a supervisor. Moreover, Stewart did not even have a college degree. Finally, Defendants have shown that seniority is of no consequence whatsoever in the selection process for LOT classes, because the RO position is not subject to a collective bargaining agreement.

**6.** Even if Plaintiff could sufficiently identify an adverse employment action, whether she establishes a *prima facie* case of racial or sex discrimination under Title VII is highly questionable, because she provides no summary judgment evidence that demonstrates that she was qualified for the positions she allegedly sought, or that Defendant's conduct was due to gender animosity. In accordance with *McDonnell Douglas,* Plaintiff's failure to present such evidence prevents the Court from inferring discrimination. Bending over backwards, however, the Court will continue the analysis under the assumption that a *prima facie* case of differential treatment has been established.

Next, Defendant has comprehensively set forth the nature of the RO position and selection criteria. The RO position is "perhaps one of the most coveted—and highly regulated—positions.... The individuals selected for those jobs actually oversee the running of the nuclear reactor." Candidates for the position go through intense scrutiny and training, and must be certified by the Nuclear Regulatory Commission ("NRC"). In order to maintain the privilege of conducting its own training program, HL & P must maintain accreditation with the Institute for Nuclear Power Operations. If its failure rate on the final NRC license examination becomes high, HL & P could lose its accreditation. Therefore, candidates for the LOT classes are limited to those "highly qualified and motivated individuals" who HL & P believes can pass the NRC licensing test.

Because of these rigorous requirements, HL & P states that it hires numerous ex-Navy personnel who have had prior experience, usually six or more years, on nuclear-powered vessels. Many of these ex-Navy personnel are men, due to the gender composition of Navy nuclear submariners. Because HL & P has no control over the male to female ratios of Navy personnel, it argues that any disparate impact in its hiring is not actionable under Title VII. *See Keyes v. Secretary of the Navy,* 853 F.2d 1016, 1020–21 (1st Cir.1988).

The Court finds, as a matter of law, that Defendant's evidence regarding Stewart's lack of qualifications, and the strict requirements imposed on HL & P's training program and the position of an RO, constitute legitimate, non-discriminatory reasons for their conduct. Having found these legitimate, nondiscriminatory reasons, the burden-shifting structure of *McDonnell Douglas/Burdine* becomes irrelevant to Plaintiff's claims, and the inference of unlawful discrimination created by Plaintiff's *prima facie* evidence disappears. *See Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10.

The Court now turns to the issue of pretext. A plaintiff alleging employment discrimination need not come forward with direct evidence of discriminatory intent in order to avoid summary judgment. *See La*

*Pierre,* 86 F.3d at 449; *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir.1996) (en banc). Such direct evidence of an employer's discriminatory intent is rare; therefore, Title VII plaintiffs ordinarily must prove their claims through circumstantial evidence. A plaintiff establishes this circumstantial evidence of intentional discrimination by demonstrating that Defendant's articulated nondiscriminatory rationale is pretextual. *See McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. Indeed, "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination." *Hicks,* 509 U.S. at 511, 113 S.Ct. at 2749.

Although the burden here rests with Plaintiff, she fails to persuade the Court that a discriminatory reason more likely motivated Defendant or that Defendant's proffered reason is unworthy of credence. *See Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. Plaintiff has failed to show that Defendant's reasons are a pretext of promotion discrimination under Title VII, because she has failed to rebut Defendant's evidence that she was not qualified for the RO or Head Operator position. All Plaintiff alleges is that she became a Reactor Plant Operator in 1989, and that each year after that she was denied the opportunity to become the RO. She adduces no proof whatsoever of her qualifications for that position, other than the fact that she received ratings from "good" to "superior," and her own self-serving affidavit, containing her opinion that she did not get promoted because she is a woman.

In fact, the only evidence submitted with Stewart's Response to Defendant's Motion is her own affidavit, her EEOC charge and personal statement submitted with the charge, and a few pages of her deposition. Other than her personal beliefs, Plaintiff clearly has no evidence to support her assertion that she was denied promotions or treated unfairly due to her sex. Similarly, an exhaustive review of the summary judgment evidence reveals that the only evidence supporting any of Plaintiff's claims is her personal beliefs. "Speculation and belief are

insufficient to create a fact issue as to pretext." *McKey v. Occidental Chem. Corp.,* 956 F.Supp. 1313, 1319 (S.D.Tex.1997) (Kent, J.). Moreover, conclusory allegations of intentional discrimination simply do not suffice.[7] *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir.1996) ("In short, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden.... It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason.") (en banc); *see also Ray,* 63 F.3d at 434 (stating that "bald assertions of age discrimination are inadequate to permit a finding that proscribed discrimination motivated [the defendant's] actions against [the plaintiff]"). Consequently, Defendant's Motion for Summary Judgment on Plaintiff's intentional discrimination claims is **GRANTED**, and those claims are hereby **DISMISSED WITH PREJUDICE.**[8]

### C. *Retaliation*

Plaintiff admits in her deposition that she is claiming only discrimination, and not retaliation. Her First Amended Complaint contains a retaliation allegation, but it was filed before the case was severed into individual actions. Because Plaintiff has admitted that she is not claiming retaliation, and furthermore because Plaintiff failed to allege retaliation in her EEOC charge, the retaliation claim is hereby **DISMISSED WITH PREJUDICE.**

### D. *Hostile Work Environment Sexual Harassment*

Next, Plaintiff asserts a claim of hostile environment sexual harassment under Title VII. For such a claim, Stewart must prove the following elements:

(1) she belongs to a protected group;

(2) she was subject to unwelcome sexual harassment,

(3) the harassment was based upon sex;

(4) the harassment affected a term, condition or privilege of employment,

(5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Waltman v. International Paper Co.,* 875 F.2d 468, 477 (5th Cir.1989) (brackets and ellipses in original) (quoting *Jones v. Flagship Int'l,* 793 F.2d 714, 719–20 (5th Cir. 1986)).

Defendant first argues that Plaintiff cannot maintain her sexual harassment claims because several of the complained-of incidents occurred greater than 300 days before she filed an EEOC charge. As discussed previously, the events alleged by Plaintiff consist of isolated incidents and do not qualify under the continuing violation exception to the EEOC's 300–day requirement. Each incident should have produced the notice of the discrimination that she now alleges. Therefore, the Court finds that the incidents complained of that occurred prior to December 4, 1994 are time-barred.

As to those claims that are not time-barred, in interrogatories, Plaintiff listed ten incidents that form the basis of her hostile work environment sexual harassment claim:[9] (1) a woman who became a Reactor Operator was accused of cheating because she did better than men on tests; (2) that men walked through the women's restroom on their way to their work stations, and her

---

7. For instance, Plaintiff alleges that the reason there is no evidence of her qualifications is that "HL & P changed the selection criteria each time and said criteria was [sic] subjective rather than objective." Plaintiff's conclusory statement to support her conclusory allegations about her qualifications are plainly inappropriate to show pretext. Her affidavit, deposition, and personal statement are rife with similar strongly opinionated but woefully unsubstantiated allegations.

8. When a plaintiff alleges a claim for intentional infliction of emotional distress based on the same facts making up her Title VII claim, the former is preempted. *See Jackson v. Widnall,* 99 F.3d 710, 716 (5th Cir.1996); *Rowe v. Sullivan,* 967 F.2d 186, 189 (5th Cir.1992).

9. Although several of these events occurred before December 4, 1994, the Court nevertheless addresses Plaintiff's allegations on their merits.

supervisor said that women should use a portable toilet outside instead; (3) one of the managers "did not approve of women as operators"; (4) a co-worker made derogatory comments about her in front of others when she was not there; (5) the same co-worker treated another woman on her crew better than Stewart because she cooked for the crew and acted more "feminine"; (6) during a hurricane, a supervisor told two women that he would not require male employees staying at the plant overnight to move their bedrolls, so that the women had to use the restroom in another unit; (7) a male trainee did not want to work with her and did not want to take orders from a woman, but was never reprimanded; (8) a female operator who was a temporary Head Operator was treated poorly by men, but when she was again demoted "they had no problems working with her"; (9) Stewart had difficulty getting the male operators to work with her on tasks; (10) a male Head Operator made comments to others insinuating that Stewart was untrustworthy whenever she tried to operate equipment.

■ Plaintiff's workplace sexual harassment claim fails for two reasons. First, to maintain a claim of sexual harassment, "the challenged conduct must create an environment that a reasonable person would find hostile or abusive." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 682, 136 L.Ed.2d 607 (1997). Whether an environment is hostile or abusive depends on the totality of the circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 371–72, 126 L.Ed.2d 295 (1993). "[C]asual or isolated manifestations of a discriminatory environment are not sufficient to demonstrate a hostile working environment under the law." *Gearhart v. Eye Care Ctrs. of America, Inc.*, 888 F.Supp. 814, 825 (S.D.Tex.1995); *see also DeAngelis*, 51 F.3d at 595–96; *Jones*, 793 F.2d at 719–20.

■ None of the incidents identified in the record rise to the level required to establish a hostile work environment. Several of the alleged incidents do not even involve Stewart, but relate to other women. These events do not meet the requirement that she personally was subject to unwelcome sexual harassment. Next, Stewart has not established that the incidents she complains of were based on her sex. She merely alleges that she perceives that the alleged mistreatment was based on her sex. Nowhere does she allege the sort of highly offensive "verbal or physical conduct of a sexual nature" required for sexual harassment. *See Jones v. Flagship Int'l*, 793 F.2d 714, 719 (5th Cir. 1986). Merely alleging that women were treated differently than men is insufficient; the conduct "must create an environment that a reasonable person would find hostile or abusive." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 682, 136 L.Ed.2d 607 (1997). At most, the allegations support that Stewart did not have a good working relationship with her co-workers. However, "Title VII is not a shield against harsh treatment at the workplace." *Jackson v. City of Killeen*, 654 F.2d 1181, 1186 (5th Cir. Unit A Sept.1981).

■ Second, Plaintiff has not established that HL & P "knew or should have known" about the alleged harassment and failed to take appropriate action. To survive summary judgment, Plaintiff must produce evidence showing "that [Defendant] knew or should have known of the harassment in question and failed to take prompt remedial action." *Jones*, 793 F.2d at 719–20 (quotations omitted). Although she claims that she reported some of the incidents to various supervisors, she fails to identify any of these supervisors. Vague allegations are insufficient to satisfy Plaintiff's summary judgment burden. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (party opposing summary judgment must come forward with specific facts showing a genuine issue for trial). Furthermore, Stewart never filed a grievance with her union, nor did she inform anybody in the Human Resource Services, as required by HL & P's sexual harassment policy. Accord-

ingly, because Plaintiff has failed to establish the essential elements of her sexual harassment claim, Defendant's Motion for Summary Judgment on that claim is **GRANTED,** and it is **DISMISSED WITH PREJUDICE.**

### E. Compensation Discrimination Claim

In the First Amended Complaint, Plaintiff also alleges compensation discrimination in violation of Title VII and the Equal Pay Act, 29 U.S.C. § 206(d)(1). However, as with her retaliation claim, Plaintiff admitted in her deposition that she is not claiming compensation discrimination in this lawsuit. Furthermore, her claims would have no merit since Stewart was a bargaining unit employee whose wages were controlled by a collective bargaining agreement. Consequently, Plaintiff's compensation discrimination claim is also **DISMISSED WITH PREJUDICE.**

### F. Constructive Discharge

■ Plaintiff also alleges that she was constructively discharged. To establish that he was constructively discharged, Plaintiff must prove that his employer made his working conditions so difficult or unpleasant that a reasonable person in his shoes would have felt compelled to quit. *Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 242 (5th Cir.1993); *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir.1994). If an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into involuntary resignation, then the employer has committed a constructive discharge and is liable as if the employee had been formally discharged. *Ugalde*, 990 F.2d at 242–43. The Fifth Circuit considers the following factors in determining whether a person was constructively discharged: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not." *Barrow*, 10 F.3d at 297.

Stewart has produced absolutely no evidence of any of the factors above, possibly excepting the fourth factor, that she was assigned (but not permanently reassigned) to *some* menial or degrading work, and even this evidence consists merely of her own self-serving and conclusory allegations. Furthermore, because the Court has found that Plaintiff has failed to establish her claim of hostile work environment, her constructive discharge claim necessarily fails as well. *See Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 195 n. 7 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 682, 136 L.Ed.2d 607 (1997). Furthermore, as a matter of law, the alleged occurrences, even if taken as true, do not support the inference that HL & P deliberately caused a intolerable working environment. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's constructive discharge claim is **GRANTED,** and such claim is **DISMISSED WITH PREJUDICE.**

## IV. STATE LAW CLAIMS

### A. Negligence Claims

■ In her Complaint, Plaintiff alleges "general negligence," negligent hiring, negligent supervision, and negligent retention. However, Plaintiff not only fails to establish the necessary elements of these claims, but she also fails to demonstrate why such claims are not barred by the Texas Workers' Compensation Act ("TWCA"), TEX.LAB.CODE ANN. § 408.001. "[TWCA] provides the exclusive remedy for injuries sustained by an employee in the course of his employment as a result of his employer's negligence." *Ward v. Bechtel Corp.*, 102 F.3d 199, 203 (5th Cir. 1997) ("The essence of Ward's case is that she was harmed, while trying to do her job, by another employee who resisted her authority, and that Bechtel failed to respond adequately. To the extent that her case is based on Bechtel's alleged negligence, recovery is foreclosed by the [TWCA].") Because Plaintiff offers absolutely no reason why her negligence claims are not barred by the TWCA, Plaintiff's claims of general negligence, negligent hiring, negligent supervi-

sion, and negligent retention are **DISMISSED WITH PREJUDICE.**[10]

## B. *Intentional Infliction of Emotional Distress*

 Finally, Plaintiff asserts a claim for intentional infliction of emotional distress. To maintain such a claim, Plaintiff must show: (1) Defendant acted intentionally or recklessly; (2) Defendant's conduct was extreme and outrageous; and (3) Defendant's conduct caused Plaintiff severe emotional distress. *See Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993). For conduct to be "extreme and outrageous," it must surpass all bounds of decency, such that it is utterly intolerable in a civilized community. Liability does not attach for mere insults, indignities, threats, annoyances, or petty oppressions. *See Ward*, 102 F.3d at 203. Viewed in a light most favorable to Plaintiff, her allegations simply do not rise to the level necessary to support an intentional infliction of emotional distress claim. *See Johnson v. Merrell Dow Pharmaceuticals, Inc.*, 965 F.2d 31, 33–34 (5th Cir.1992) (noting that denial of promotion and salary disputes are "mere employment disputes" insufficient to establish a claim for intentional infliction of emotional distress); *see also Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 243 (5th Cir.1993) (declaring that allegations of illegal discrimination, in and of themselves, do not suffice to establish an intentional infliction of emotional distress claim). Consequently, Plaintiff's intentional infliction of emotional distress claim is **DISMISSED WITH PREJUDICE.**[11]

## V. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED** and each and every one of Plaintiff's claims in this action are hereby **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**

---

10. Plaintiff's negligence claims are clearly more properly brought pursuant to Title VII.

11. Moreover, such claims are preempted. *See supra* discussion of negligence.