Phyllis A. CEASAR

v.

## NORTH STAR STEEL TEXAS, INC.

### No. 1:98–CV–32.

United States District Court,
E.D. Texas,
Beaumont Division.

March 8, 1999.

---

Carnegie H. Mims, Jr., Jefferson & Mims, Houston, TX, for Phyllis A Ceasar, plaintiff.

Melanie McKenzie, Crain Caton & James, Houston, TX, for North Star Steel Texas Inc, defendant.

## MEMORANDUM ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

SCHELL, Chief Judge.

The court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, at Beaumont, Texas, for consideration pursuant to applicable laws and orders of this court. The court has received and considered the Report of the United States Magistrate Judge pursuant to such order, along with the record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the magistrate judge are correct and the Report of the Magistrate Judge is ADOPTED. It is therefore

ORDERED AND ADJUDGED that defendant's motion for summary judgment is GRANTED, and plaintiff's claims against defendant are DISMISSED with prejudice.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HINES, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiff, Phyllis A. Ceasar, a black female, alleges gender and race discrimination and sexual harassment in this action against her former employer, North Star Steel Texas, Inc. ("NSST"). Jurisdiction is based on Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.* (1998) ("Title VII").

NSST moves for summary judgment. The motion is referred to the undersigned for review, hearing, if necessary, and recommendation for disposition under 28 U.S.C. § 636(b) and Local Rules for Assignment of Duties to Magistrate Judges.

### II. BACKGROUND

At the time the complaint was filed in the instant suit, plaintiff, Phyllis A. Ceasar, was an employee with NSST. She began working there in September 1985. (Pl's Aff. at 1.) She worked for 10 years as the Quality Assurance and Technical Coordinator ("QATC") for NSST. (*Id.*) Effective January 26, 1998, Ceasar worked in the production services department at NSST's steel manufacturing plant in Beaumont, Texas.

On November 12, 1998, plaintiff was notified by NSST via letter that she was being laid off. (*Id.*) The letter stated that NSST would experience a "mass layoff" at its steel mill in Beaumont, Texas, and that the lay-off was considered permanent. (Pl's Resp. Deft's Mot. for Summary Judgment, Attach. 1.) Ceasar was laid off from her job effective November 12, 1998, but she continued to be paid until January 15, 1999. (*Id.*) In the Production Services Department, two other salaried employees were laid off, a white male with three years experience and a white female with ten months experience. (Pl's Aff. at 1.)

While working in Quality Assurance, Caesar's direct supervisor was Mr. John Nelson. (Pl's Resp. Deft's Mot. for Summary Judgment, Exh. A at 30–31.) (hereinafter "Ceasar Depo"). She also performed work for Mr. Mike Mayer, a salesman in the department. (*Id.*)

During 1996, Ceasar alleges she began having problems with Mr. Mayer. (*Id.*)

Her affidavit of November 18, 1998, states that Mr. Mayer "began hollering at me, accusing me of not doing my job, harassing me ... and just making my life miserable." (*Id.*) Further, Mr. Mayer threw a book at her and screamed insults. Plaintiff complained to Mr. Nelson about her problems with Mr. Mayer, but he failed to investigate them or reprimand Mr. Mayer for his behavior. (*Id.* at 2.) Instead, she contends that Mr. Nelson allowed Mr. Mayer to perform her annual evaluation, at which time Mr. Mayer noted that Ceasar needed to improve her work performance and her interpersonal skills. As a result of this evaluation, Ceasar was placed on a six month probation. (*Id.*)

In response, plaintiff filed an employment discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). In her EEOC discrimination charge, plaintiff alleged that she was discriminated against because of her race and sex. (Def't's Original Answer, Ex. A.) As the factual basis for her charge, she stated that beginning October 1, 1996 she had been harassed by having a book thrown at her, accused of excessive telephone usage and placed on disciplinary probation as a result of false information. (*Id.*)

Ceasar alleges that "things got worse" after she filed her EEOC complaint. (*Id.*) She was transferred to the Production Services Department, where her duties remained the same as those in her former position as QATC.[1] However, plaintiff liked her position in the Production Services Department better than her former position, and did not want to transfer back to Quality Assurance. (Ceasar Depo at 31.) Further, plaintiff's wages were not reduced as a result of either her probation or transfer. (Pl's Resp. to Df's Request's for Admissions at 2.)

The EEOC dismissed plaintiff's charges and issued a notice of rights on October 20, 1997. (Original Compl. at 2.) Plaintiff then filed the instant suit on January 20, 1998. In her original complaint, Ceasar alleged racial and gender discrimination and hostile work environment sexual harassment under Title VII. (Original Compl. at 3.) She stated that "male employees have embarked on a campaign of harassment and intimidation" against her. (*Id.*) Specifically, she cited the following facts in support of her allegations: (1) that a male supervisor threw a book at her; (2) that she was watched closely; (3) that she was accused constantly of poor job performance; (4) that she was placed on probation without her knowledge; and (5) that she was evaluated on improper grounds.[2] (*Id.*)

### III. NSST'S MOTION FOR SUMMARY JUDGMENT

Defendant moves for summary judgment on three grounds. (Def's Motion for Summary Judgment at 1.) First, defendant argues that it is entitled to summary judgment on Ceasar's claim of gender discrimination because plaintiff admitted during her deposition that she suffered no discrimination on the basis of her gender. (*Id.*) Next, defendant argues that it is entitled to summary judgment on Ceasar's claim of sexual harassment because, again, plaintiff admitted she was not harassed because of her sex. (*Id.*) Finally, defendant contends it is entitled to summary judgment on plaintiff's claim of race discrimination because she was not subject to

1. The record is silent as to the circumstances precipitating plaintiff's transfer from the Quality Assurance to the Production Services Department. The record does indicate that the transfer occurred sometime after plaintiff completed her six month disciplinary probation.

2. Plaintiff does not allege retaliation under Title VII in her complaint. However, in an Affidavit attached to her Response to Defendant's Motion for Summary Judgment, she contends that NSST retaliated against her for filing the instant suit. Because she did not assert a claim of retaliation in her EEOC charge nor in her original complaint in the instant suit, the issue is not before the court. *See Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir.1981) (only issues properly raised by complaint may be the subject of summary judgment).

an adverse employment action because of her race. (*Id.*)

In response, Ceasar emphatically denies that she admitted suffering no discrimination or harassment because of her gender. Plaintiff does admit, however, that the discrimination was based more on her race than sex. Further, Ceasar argues that NSST is not entitled to summary judgment on her claims of race and gender discrimination because she can establish a prima facie case of race discrimination. Finally, plaintiff argues that she can show that the reasons proffered by the defendant for its actions were pretextual.

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510.

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact finder could find in favor of the nonmoving party, summary judgment should not be granted. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Determining credibility and weighing evidence are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

Thus, the movant has the initial burden of proof. *See Longstreth v. Maynard,* 961 F.2d 895 (10th Cir.1992). This burden is satisfied when the movant shows that if the evidentiary record were reduced to admissible evidence at trial, it would be insufficient to permit the nonmovant from carrying its burden of proof. *See Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265, (1986).

Once the movant meets its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to a material fact. *See Matsushita Elec. Indus. Co., Ltd.,* 475 U.S. at 586, 106 S.Ct. at 1356. Rather, as the Supreme Court stated in *Celotex,* the nonmoving party must "go beyond the pleadings, and by affidavits, or by depositions, answers to admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553 (internal quotation removed); *see also, McGann v. H & H Music, Co.,* 946 F.2d 401, 408 (5th Cir.1991). Neither unsubstantiated, conclusory assertions, nor inadmissable hearsay are sufficient to raise a genuine issue of material fact. *See Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998); *see also, Cormier v. Pennzoil Exploration & Production Co.,* 969 F.2d 1559, 1561 (5th Cir.1992) (In a motion for summary judgment, the court may not "properly consider hearsay evidence in affidavits and depositions.").

## V. DISCRIMINATION AND HARASSMENT CLAIMS UNDER TITLE VII

### A. Title VII Claims Based on Discrimination

Plaintiff alleges unlawful discrimination because of sex and race. Section 703(a)(1) of Title VII provides in relevant part:

It shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of

such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). Title VII also prohibits an employer from retaliating against any of its employees for asserting their rights under Title VII.

*See id.* § 2000e–3(a).

Plaintiff's Title VII claims require a showing of intentional discrimination. To determine whether intentional discrimination exists, the Fifth Circuit applies the burden-shifting analytical framework first established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See, e.g., Johnson v. Chapel Hill Indep. Sch. Dist.,* 853 F.2d 375, 381 (5th Cir.1988) (applying *McDonnell Douglas* to a differential treatment case brought pursuant to Title VII).

Under *McDonnell Douglas,* the court employs a three-pronged test designed to determine a defendant's motivation in taking the challenged action. *See McDonnell Douglas,* 411 U.S. at 803–04, 93 S.Ct. at 1824–25. First, the plaintiff must establish a prima facie case by proving the elements of a discrimination claim. If the plaintiff proves her prima facie case, a presumption of discrimination arises. *See Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 957 (5th Cir.1993).

Second, the burden of production shifts to the defendant to rebut this presumption by articulating a legitimate, nondiscriminatory reason for the alleged discriminatory action. *See Olitsky v. Spencer Gifts, Inc.,* 964 F.2d 1471, 1478 n. 19 (5th Cir.1992). A defendant meets this burden by proffering admissible evidence of an explanation that would be legally sufficient to justify judgment for the defendant. *See Guthrie v. Tifco Indus.,* 941 F.2d 374, 376 (5th Cir.1991). This does not require the defendant to persuade the trier of fact that there was no intentional discrimination; the defendant need only produce evidence on that point. *See Hicks,* 509 U.S. at 507–08, 113 S.Ct. at 2747–48. If the defendant satisfies this burden, the presumption of discrimination established by the plaintiff's prima facie case is defeated. *See Burdine,*

450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10.

Third, a plaintiff must produce evidence that the defendant's proffered reasons are mere pretexts, the real reason for the action having been based on an impermissible animus. *See Id.* at 256, 101 S.Ct. at 1095. The plaintiff may succeed at this point, either by persuading the court that a discriminatory reason more likely motivated the defendant, or by showing that the defendant's proffered explanation is not entitled to credence. *See Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. The ultimate burden of proof of intentional discrimination rests at all times with the plaintiff. *See Hicks,* 509 U.S. at 507, 113 S.Ct. at 2749.

## B. Title VII Claims Based on Harassment

■ Plaintiff also asserts a claim of hostile environment sexual harassment under Title VII. For such a claim, Ceasar must prove the following elements: (1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based upon sex; (4) the harassment affected a term, condition or privilege of employment; and, (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *See Waltman v. International Paper Co.,* 875 F.2d 468, 477 (5th Cir.1989) (quoting *Jones v. Flagship Int'l,* 793 F.2d 714, 719–20 (5th Cir.1986)).

■ To maintain a claim of sexual harassment, "the challenged conduct must create an environment that a reasonable person would find hostile or abusive." *Weller v. Citation Oil & Gas Corp.,* 84 F.3d 191, 194 (5th Cir.1996). General rudeness or uncivil behavior in the work place does not create an action under Title VII. *See Webb v. Cardiothoracic Surgery Assoc. of North Texas,* P.A., 139 F.3d 532, 539 (5th Cir.1998). Whether an environment is hostile or abusive depends on the totality of the circumstances, focusing on

factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 371–72, 126 L.Ed.2d 295, (1993). "[C]asual or isolated manifestations of a discriminatory environment are not sufficient to demonstrate a hostile working environment under the law." *Gearhart v. Eye Care Ctrs. of America, Inc.*, 888 F.Supp. 814, 825 (S.D.Tex.1995).

## VI. DISCUSSION & ANALYSIS

Plaintiff's discrimination and harassment claims will be addressed separately:

### A. Ceasar's Allegation of Racial & Gender Discrimination

Plaintiff's deposition reveals that her primary complaint involves racial discrimination. However, it does not constitute an unequivocal judicial admission that she suffered no gender discrimination or sexual harassment. Plaintiff testified that the alleged discrimination was "more racial", but she also attributed it to being a "black female."[3] Therefore, both racial and discrimination claims are addressed in this section. The sexual harassment claim will be considered separately in a subsequent section.

■ Under the *McDonnell Douglas Corp. v. Green* burden-shifting analytical framework described above, plaintiff first must establish a prima facie case. To establish a prima facie case based on alleged differential treatment on account of race or gender, a plaintiff must demonstrate that: (1) she belongs to a protected group; (2) she suffered an adverse employment action; and (3) she suffered the adverse action due to her membership in the protected class. *See Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir.1997). The first prong is met, as plaintiff is a black female.

■ The second prong is whether the plaintiff suffered an adverse employment action. Adverse employment actions under Title VII, § 2000e–2(a)(1) encompass a broad range of conduct. They include discharges, demotions, refusals to hire, refusals to promote, and reprimands. *See Stewart v. Houston Lighting & Power Co.*, 998 F.Supp. 746, 751 (S.D.Tex.1998) (quoting *Crady v. Liberty Nat. Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)) ("A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.").

Moreover, § 2000e–2(a)(1) "reaches acts which merely 'would tend' to affect the employee." *See Fyfe v. Curlee*, 902 F.2d 401, 404 (5th Cir.1990) (holding that a transfer to a less desirable but equally paying job constituted a demotion); *see also Levin v. Delta Air Lines, Inc.*, 730 F.2d 994, 996 (5th Cir.1984) (holding that placing pregnant flight attendants on ground duty was an adverse employment action).

In the instant suit, plaintiff does not allege that her transfer to another department was to a less desirable job. Nevertheless, a reasonable jury could find that plaintiff's proffered complaints of disciplin-

---

**3.** Defendant cites the following exchange from plaintiff's deposition:

Q. What makes you think it was sexually motivated, you know a gender thing?
A. [Mayer] didn't call me white or black or anything like that; but the way I feel, being the only black in the office and the way he talked to me, basically its just racial.
Q. Not gender but race?

A. Okay
Q. I mean is that what you're saying, that you—
A. Yes
Q. Think it was more race than gender?
A. It's more racial. Because being the only black female in the office.
(Def's Motion for Summary Judgment at 5.)

ary probation and transfer to another department, albeit one she liked and one with an equivalent salary, constitute a "limitation" of employment which deprived or "tended to deprive" plaintiff of "opportunities," or at the very least adversely affected her status.[4] *See* 42 U.S.C. § 2000e–2(a)(1); *Armstrong v. City of Dallas*, 997 F.2d 62, 66 n. 12 (5th Cir.1993) ("We no longer ask whether literally little evidence, i.e., a scintilla or less, exists but, whether the nonmovant could, on the strength of the record evidence, carry the burden of persuasion with a reasonable jury.").

■ The third prong of a prima facie case of racial or sex discrimination is that the adverse action was suffered due to membership in the protected class. *Ward v. Bechtel Corp.*, 102 F.3d 199, 202. Both of plaintiff's discrimination claims fail at this juncture because she provides no summary judgment evidence, except conclusory statements made by affidavit and during her deposition, that demonstrate her disciplinary probation or transfer to another department was based on discriminatory reasons or that defendant's conduct was due to gender or racial animus.[5] In accordance with *McDonnell Douglas*, plaintiff's failure to present such evidence prevents the inference that unlawful discrimination occurred.

■ Nevertheless, for analytical purposes only, this report will proceed to the remainder of the burden-shifting analytical framework under the assumption that plaintiff has established a prima facie case

of differential treatment. Assuming *arguendo* that plaintiff has established a prima facie case, the defendant has proffered legitimate and nondiscriminatory reasons for its placement of plaintiff on disciplinary probation. NSST points to plaintiff's 1997 performance evaluation, in which she received an "unsatisfactory rating." (Deft's Motion for Summary Judgment, Ex. B.) Mr. Nelson, who signed the evaluation as her supervisor, stated that plaintiff's performance problems were in four different areas: self-motivation, quality of work, attendance,[6] and interpersonal skills. (*Id.*) Specifically, NSST cites plaintiff's four day absence from work during January 1997, her unwillingness to perform a task requested by a Sales Service Representative, and numerous inaccuracies in her work during a three day monitoring period. (*Id.*) As a result, plaintiff was placed on a six month disciplinary probation.

Evidence regarding disciplinary poor job performance constitutes legitimate, nondiscriminatory reasons for actions. Thus, the burden-shifting structure of *McDonnell Douglas* becomes irrelevant to plaintiff's claims, and the inference of unlawful discrimination created by plaintiffs prima facie evidence disappears. *See Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10.

■ Absent this inference, plaintiff must show that defendant's actions were a pretext for discrimination. A plaintiff alleging employment discrimination need not come forward with direct evidence of discriminatory intent in order to avoid sum-

4. Although plaintiff's job in Production Services involved equivalent pay and substantially identical duties as her job in QATC, her departmental seniority was less. This apparently affected her adversely when layoffs occurred in November, 1998. The two other employees who were terminated, while both white, had substantially less tenure than plaintiff.

5. Plaintiff mentions that she liked her new job in the Production Services Department because she was "no longer subjected to the sexual and racial harassment." (Pl's Aff. 2.) But she does not specifically identify any discriminatory reasons related to her gender or

race for her placement on disciplinary probation or her subsequent transfer to another department.

Similarly, in her deposition, the only mention of race or gender discrimination is when plaintiff stated that Mr. Mayer did not call her white or black, but that the way he talked made her think his actions were based on race. (Ceasar Depo at 188.)

6. Related to plaintiff's absenteeism problems, defendant cites Ceasar's evaluation from 1990 that stated "[a]ttendance continues to be a problem and needs to be improved." (Deft's Motion for Summary Judgment, Ex. B.)

mary judgment. *See Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir.1996) (en banc). Such direct evidence of an employer's discriminatory intent is rare; therefore, Title VII plaintiffs ordinarily must prove their claims through circumstantial evidence. A plaintiff establishes this circumstantial evidence of intentional discrimination by demonstrating that defendant's articulated nondiscriminatory rationale is pretextual. *See McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825.

Summary judgment is particularly appropriate when the court is evaluating evidence at the "pretext" stage of the *McDonnell Douglas* analysis. " '[I]t is relatively easy both for a plaintiff to establish a prima facie case and for a defendant to articulate a legitimate, non-discriminatory reason for his decision.' In the context of summary judgment ... the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext." *Britt v. Grocers Supply Co.,* 978 F.2d 1441, 1450 (5th Cir.1992) (quoting *Amburgey v. Corhart Refractories Corp.,* 936 F.2d 805, 811 (5th Cir.1991) (citations omitted)). Speculation and belief are insufficient to create a fact issue as to pretext. *See id.* at 1451. Nor can pretext be established by mere conclusory statements of a plaintiff who feels that she has been discriminated against. *See E.E.O.C v. Exxon Shipping Co.,* 745 F.2d 967, 976 (5th Cir.1984).

Although the burden here rests with plaintiff, she fails to offer any evidence that a discriminatory reason more likely motivated defendant or that defendant's proffered reason is unworthy of credence. *See Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. Plaintiff has failed to show that defendant's reasons for her placement on disciplinary probation or transfer are a pretext for discrimination under Title VII. Plaintiff has failed to rebut defendant's evidence that she had numerous performance deficiencies that were the cause of NSST's actions. All plaintiff alleges is that she "feels" these actions were based on her race and gender. She proffers no proof whatsoever of any specific racial or gender animus on the part of her supervisors. Other than her personal beliefs, plaintiff cites no evidence to support her assertion that she was treated unfairly due to her race or sex.

In plaintiff's "Response to Defendant's Motion for Summary Judgment," she argues that pretext can be proved by Mike Mayer's involvement in her negative performance evaluation and in a memorandum pointing out deficiencies in her work performance because "a jury could easily see through those coincidences." (Pl's Resp. Deft's Mot. for Summary Judgment at 9, 10.) Plaintiff may in good faith advance an argument that it was grossly unfair for her supervisor, Mr. Nelson, to allow Mayer, with whom plaintiff had experienced difficulties, to perform her evaluation; however, such evidence does not remotely infer, much less prove race or gender discrimination.

Ultimately, then, the only evidence supporting any of plaintiff's claims is her subjective, personal beliefs. Such beliefs simply are not enough to raise a genuine issue of material fact. *See Nichols v. Grocer,* 138 F.3d 563, 570 (5th Cir.1998) ("[A] subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief.") (quoting *Little v. Republic Refining Co.,* 924 F.2d 93, 95 (5th Cir.1991)); *Hornsby v. Conoco,* 777 F.2d 243 (5th Cir. 1985) (subjective belief and speculation cannot form the basis for judicial relief); *Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 567 (5th Cir.1983) ("a subjective belief of discrimination, however genuine, [may not] be the basis of judicial relief"); *Houser v. Sears, Roebuck & Co.,* 627 F.2d 756 (5th Cir.1980) (holding that generalized testimony by an employee regarding his subjective belief that his discharge was the result of discrimination is insufficient to make an issue for the jury in the face of proof showing an adequate, nondiscriminatory reason for his discharge).

Simply put, "speculation and belief are insufficient to create a fact issue as to

pretext." *McKey v. Occidental Chem. Corp.*, 956 F.Supp. 1313, 1319 (S.D.Tex. 1997). Moreover, conclusory allegations of intentional discrimination are not sufficient. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) ("In short, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden.") (en banc). Consequently, defendant's Motion for Summary Judgment on plaintiff's intentional discrimination claims should be granted because plaintiff has not set forth specific facts showing that there is a genuine issue for trial both with regard to the third prong of a prima facie case, or with respect to the ultimate burden of persuasion that the defendant's employment actions were pretext for unlawful discrimination.

## B. Ceasar's Allegation of Hostile Work Environment Sexual Harassment

Plaintiff listed three incidents in her original complaint that form the basis of her hostile work environment sexual harassment claim: (1) Mr. Mayer raised his voice at her and treated her contemptuously; (2) Mr. Mayer asked her to babysit during office hours; and, (3) Mr. Mayer threw a book at her.

■ Plaintiff's workplace sexual harassment claim fails for two reasons. Ceasar has not established that the incidents she complains of were based on her sex. She merely alleges that she perceives that the alleged mistreatment was based on her sex. Nowhere does she allege the sort of highly offensive "verbal or physical conduct of a sexual nature" required for sexual harassment. *See Jones v. Flagship Int'l*, 793 F.2d 714, 719 (5th Cir.1986). Nor does she allege that the offending conduct was anything other than isolated. At most, the allegations support that Ceasar did not have a good working relationship with Mayer. However, "Title VII is not a shield against harsh treatment at the workplace." *Jackson v. City of Killeen*, 654 F.2d 1181, 1186 (5th Cir.1981).

As with general discrimination claims, vague allegations of sexual harassment are insufficient to satisfy plaintiff's summary judgment burden. *Stewart v. Houston Lighting and Power Co.*, 998 F.Supp. 746, 755 (citing *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553) (party opposing summary judgment must come forward with specific facts showing a genuine issue for trial). Accordingly, because plaintiff has failed to establish the essential elements of her sexual harassment claim, defendant's Motion for Summary Judgment on that claim should be granted.

## RECOMMENDATION

Defendant's motion for summary judgment should be granted. Plaintiff's Title VII claims against NSST should be dismissed with prejudice. All other motions should be denied as moot.

## OBJECTIONS

Objections must be (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); FED. R.CIV.P. 6(a), 6(b), 72(b),

A party's failure to object bars that party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir.1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).

February 10, 1999.